# CHARLESTON.

STAFFORD *v.* SHEPPARD.

Submitted January 25, 1905.   Decided February 1, 1905.

1  ELECTION—*Election Certificates Prima Facie Evidence—Ballots.*

Certificates of the result of an election, made by the commissioners at the precincts, are *prima facie* evidence of the result of the election. The ballots, if identified as the same cast, are primary and higher evidence; but, in order to continue the ballots as controlling evidence, it must appear that they have been preserved in the manner and by the officers prescribed by the statute, and that, while in such custody, they have not been changed or tampered with. (p. 87.)

2.  ELECTION.—*Ballots Void if Tampered With.—Extrinsic Evidence.*

If the ballots at an election precinct have the appearance of having been tampered with, the evidence of poll clerks and commissioners may be used before a canvassing board upon a recount to show that the ballots are all void because of the want of signatures of both poll-clerks, each in his own handwriting, upon all the ballots at such precinct, but not to show that the ballots have not been altered, or to show the contents of the ballots; nor can that or other evidence be used to otherwise repel the *prima facie* case of tampering arising from such appearance of the ballots. If it appear from such evidence that all of such ballots are void for such defect, then the ballots of such precinct cannot be recounted, nor can the result be declared from the certificates made by the officers conducting the election. In such case the election at that precinct is void. If there be some ballots so void, and others not so void, the canvassers must make comparison between the result shown by the certificate and that shown by the ballots. If there is no disagreement between the certificate and ballots, then the votes shown by the void ballots as cast for each of the candidates between whom recount has been asked, shall be subtracted from the total vote shown by the certificate as cast for them, respectively, and the result shown by the certificate, after such subtraction, shall be taken as the result. If, however, there be disagreement between the certificate result and the result shown by the ballots, the certificate must be taken as showing the result, without alteration. (p. 88).

Petition of John L. Stafford for a writ of *mandamus* to the board of canvassers of Mingo county.

*Mandamus Granted.*

J. H. HOLT, GEORGE J. MCCOMAS and S. D. STOKES, for petitioners.

SHEPPARD & GOODYKOONTZ, MOLLOHAN, McCLINTIC & MATHEWS, and S. U. G. RHODES, for respondents.

BRANNON, PRESIDENT:

John L. Stafford and John A. Sheppard were contesting candidates for the office of prosecuting attorney of Mingo county at the election in November, 1904. After the board of canvassers had canvassed the returns of the election, it happened that the candidates demanded a recount of the ballots, including all the precincts in the county. In the progress of the recount it was found that a ballot box in which ballots of Matewan precinct had been enclosed, they being in two sacks in which they had been placed by the canvassers who wrote their names over the sealing places, had been broken open, there being large openings in them, and the sacks of ballots which had been put in the box, had the ends partly torn off, including the names written over the sealing places by the canvassers. As these sacks of ballots thus bore the unmistakeable appearan e of having been tampered with, a fact not denied in this case, Sheppard moved the board not to recount the ballots of Matewan precinct, and to declare the result at that precinct by the certificates made out by the officers who conducted the election at that precinct. Then Stafford offered to prove that the ballots in the sacks were the identical ballots cast by the voters at Matewan precinct, and to show by evidence that, notwithstanding their appearance, they had not been tampered with, and that, upon the canvass, the said board had found the box broken in the same condition it presented when it was before the board on the recount, and that the board had, after the canvass, properly resealed the ballots before returning them to the box, and that the box was in the same condition in which it was when delivered by the clerk to the sheriff, the said box having been delivered to the sheriff as stated in the opinion in another case, between the same parties, decided December 20, 1904. The board of canvassers refused to hear the proposed evidence, and refused to recount the ballots of Matewan precinct, and declared the result of the election thereat upon the face of the certificates of the officers conducting the election. Stafford now comes to this Court asking a *mandamus* to compel the board of canvassers to reverse the action of said

board of canvassers and compel them to hear the evidence proposed by Stafford.

It is undenied and undeniable that the sacks of ballots at Matewan precinct bore unmistakeable appearance of having been tampered with. The tops of the sacks were partly torn off, and the names of the members of the board of canvassers, which they had written across the sealing places of the sacks, were gone. Under principles stated in *Dent* v. *Board*, 45 W. Va. 750, the appearance and condition of the sacks of ballots raised the presumption of unlawful tampering, and excluded the ballots from recount, and called for the declaration of the result of the election at that precinct upon the certificate returned by the precinct officers. We are of the opinion that the oral evidence proposed by Stafford is not admissible. There stands the *prima facie* case of tampering presented by the very appearance of the broken sacks. The canvassers knew that they had been so tampered with, as they themselves had but recently sealed them in the sacks, when they canvassed the returns of that precinct. When you propose to introduce oral evidence to repel the *prima facie* case of tampering, what is the character of such evidence, where will it lead? It opens a broad field, and presents a case judicial in character, proper for a court of contest. It opens the field of uncertainty; and that very uncertainty itself discredits the ballots for the purposes of a recount by such a body as a board of canvassers. It would make that board a court of contest, vested with full judicial power to hear and weigh all evidence that might be offered, so it bear any relevancy to the matter in controversy. We think this position is conformable to the functions assigned to the board of canvassers, and principles governing their proceedings in *Brazie* v. *Commissioners*, 25 W. Va. 213.

But the petition states, that the ballots at Matewan precinct are void, and not entitled to be counted either on the face of the certificate made by the officers of election or on the ballots, from the fact that the two poll clerks did not write their names on the ballot sheets, each with his own hand, as required by statute. If this be so then, as held in *Kirkpatrick* v. *Deegans*, 53 W. Va. 275, no valid ballots were cast at that precinct, the election there would be void, and its returns could not be counted for any candidate. The candidate as-

serting such to be the case ought to have the right to show this. He may do so by the evidence of the poll clerks or of the commissioners of the precinct, The ballots at that precinct ought to have been opened and inspected by the board of canvassers, in order that they and the candidate interested might know the facts, and adduce evidence to prove the nullity of the election at that precinct in the manner indicated. But he cannot adduce evidence, any evidence whatever, to identify the ballot sheets or any of them in order to repel the *prima facie* case of tampering, arising from the appearance of the sack which contained those ballots. If it be found that none of the ballots at the precinct are valid, then the whole precinct is rejected. If, however, there be some void ballots, because of the defect aforesaid, and some not subject to that defect, those not subject to that defect cannot be counted, but the result must be declared from the certificates returned by the officers of election. While the evidence of the poll clerks and commissioners may be heard to prove that the ballot sheets are the same used by the voters at the election, yet it cannot be used to prove the contents of the ballots and thus verify the count made from them. Evidence cannot be introduced to prove the contents of the ballots to repel the *prima facie* evidence of tampering arising from the appearance of the sack containing the ballots. I have said that in case some of the ballots be found to be void for want of the names of the poll clerks properly signed, those not subject to that defect cannot be recounted; so neither can the result shown by the certificate made by the officers of election be altered or affected by those ballots not properly signed by the poll clerks unless the canvassers can see by the test now to be stated that there has been no actual tampering.

We think that there is one test only which will demonstrate whether the faces of the ballots have been tampered with. The case of *Dent* v. *Canvassers*, 45 W. Va. 750, says that when there is appearance of tampering, in case of disagreement between the certificate and the result shown by the ballots, the certificate controls. This allows the canvassers to ascertain whether there is such disagreement, and does not discard the ballots unless there is such disagreement.

If there be some ballots void for want of proper signing by poll clerks, and others not so void, the canvassers must make comparison between the result shown by the .certificate and that shown by the ballots. If there is no disagreement, thus indicating that there has been no actual tampering, then the votes shown by the void ballots as cast for each of the candidates between whom recount has been asked shall 'be subtracted from the total vote shown by the certificate, as cast for them, respectively, and the result shown by the certificate, after such subtraction, shall be taken as the result. If, however, there be disagreement between the certificate result and the result shown by the ballots, the certificate must be taken as showing the result at the precinct.

The admission of the testimony of the poll clerks and precinct commissioners for the purpose of showing that the ballot sheets have not been properly signed by the poll clerks, is no exception to the general rule against the admission of extrinsic testimony, hereinbefore stated. It is founded upon the statute. Code, chapter 3, section 66. At any rate, it is justified by that statute. It tells the precinct commissioners to reject ballots having that defect. For the purpose of proving that defect, they may call upon the clerks who are present, as well as upon their own knowledge of the facts. Now, a recount is simply doing over again what the precinct commissioners have done. To do that over, they must have the same powers that are vested in the precinct commissioners. Therefore, they may call as witnesses the clerks and commissioners.

The defendants filed two pleas in abatement to the effect that Stafford had obtained from the judge of the circuit court of Mingo county an alternative writ of *mandamus*, commanding the board of canvassers to reject each and every ballot cast at Matewan precinct upon which the names of the poll clerks had not been written each in his own hand. The theory under this plea in abatement is that the pendency of the *mandamus* before the circuit court of Mingo county would prevent this *mandamus* from issuing from this Court. We do not think so. The *mandamus* in the circuit court is limited to the rejection of ballots having the defect aforesaid; whereas the *mandamus* sought from this Court has broader scope, in that it asks an inspection of the

ballots at Matewan and the admission of evidence to repel
the charge of tampering with the ballots, a matter to which
the proceeding of the circuit court does not in terms apply,
and only inferentially, and asks relief under circumstances
different from that existing in the circuit court, which pro-
ceeded upon the assumption that the element of viciousness
in all the ballots, arising from their having been tampered
with, does not exist.   The scope of the relief which may be
granted upon the *mandamus* in the circuit court is not clear-
ly as broad as that which may be afforded in this case.   We
should not refuse to entertain this writ, unless we can see
very clearly that relief as broad and effectual can be given
upon the *mandamus* in the circuit court.   "If the whole re-
lief sought in the second suit is not attainable in the first,
or if the relief which may be given or the remedies avail-
able in the second suit are more extensive than can be attain-
ed in the first, a plea to the second suit of the pendency of the
first is not good."  1 Cyc. 29.

The objection that the canvassers have declared the result,
issued the certificate and adjourned is no defense.  *Simms* v.
*Daniels*, 49 W. Va. 554.

A *mandamus* giving relief to the extent above indicated
is awarded.

*Writ Awarded.*

Poffenbarger, Judge, (*dissenting in part from decision.*):

From so much of the decision as requires a comparison to
be made between the result shown by the certificate of the
precinct election officers and the result shown by the ballots,
for the purpose of ascertaining whether or not the vote shown
by the void ballots can be deducted from the certified returns,
and directing, under certain conditions, that such deductions
be made, I dissent.   I believe this much of the conclusion
reached by a majority of the Court to be in conflict with cer-
tain principles stated in the opinion as sound and universally
recognized law.   The board of canvassers is not a judicial
body.    It is incompetent to deal with the question of fraud.
Before it no evidence is admissible for the purpose of over-
coming the presumption of viciousness arising from the fact
that the ballots have been tampered with.  If inferences aris-
ing from comparison of the ballots with the certificate or
otherwise are allowed to be used as evidence for that pur-

pose, I see no reason why any other revelant evidence might
not as well be admitted for that purpose, and the board of
canvassers held to be a judicial body with all those powers
which are denied to it by the case of *Brazie* v. *Commission-
ers*, 25 W. Va. 213.   I place the power to hear testimony of
the poll clerks, election commissioners and others present at.
the election, for the purpose of identifying the papers used
at the election and of obtaining complete returns, upon the·
statutory provisions which seem clearly to authorize it.   I
place the right to hear the evidence of such officers, as to the·
manner in which the clerks' signatures were endorsed upon
the backs of the ballots, upon a statutory provision also, and
I believe this to be the full extent of the powers of a board.
of canvassers to hear evidence, respecting the election and
its returns.   The comparison would be obviously inconclu-
sive of the question as to whether or not the ballots have been
changed on their faces.   Votes for candidates may have been
stricken off of good ballots and put on void ones, and *vice·
versa*, without altering the whole number of good and bad
votes.   For instance, a candidate may have a total of one
hundred votes, fifty on ballots properly signed by the poll
clerks, and fifty on ballots not so signed.   On their faces
these ballots may be so manipulated and altered as to give·
that candidate sixty votes on void ballots and forty on good
ones, whereby he would sustain a loss of ten votes, although
the total of good and bad votes would remain unaltered.
Complaint is made because the record indicates that there·
are only a few ballots in the precinct which have been prop-
erly signed by the poll clerks.   But the Court cannot lay
down a rule for a special case.   It must be the same whether
there be few or many bad ballots.   No principle is perceived
under which the rule, governing the admission of evidence
in the case of a close contest, in which only a few votes would
change the result, can be varied or departed from so as to
meet a case in which it takes a large number to change the·
result.