The relators, Tennis Hatfield, J. L. Hunter, and A.D. Cook, apply for a peremptory writ of mandamus, compelling the Board of Canvassers of the election held on the 4th day of November, 1924, in Logan County, in which mandamus they seek to correct the action of the said Board of Canvassers in canvassing said election, and ascertaining the result thereof in two of the voting precincts of said county; they allege that they were candidates respectively for the offices of Sheriff, Assessor, and Commissioner of the County Court of said county, and that Emmet F. Skaggs, Elmo Gore, and J. N. Schweitzer were respectively the opposing candidates for said offices; and that upon said canvass of the returns of the several precincts in said county, the said canvassers ascertained and certified that said Skaggs had received 7486 votes, that said Gore had received 7312 votes, and that said Schweitzer had received 7308 votes for their respective offices, and that said Hatfield had received 7312 votes, that said Hunter had received 7234 votes, and that said Cook had received 7115 votes in said county for the respective offices above mentioned.
The alternative writ alleges that at precinct number 3 in Chapmanville District, known as Striker precinct, that the election officers were not appointed and qualified according to law in this: that all of said election officers except one were Democrats; that both of the receiving poll clerks at said precinct were Democrats.
It is further alleged that one J. H. Pridemore, a Republican, who appeared at said voting precinct before the opening of the polls thereof, and who had come there for the purpose of acting *Page 697 
in the capacity of Republican poll clerk at said precinct and who was by a viva voce vote duly elected by the Republicans present to act as such was prevented from acting as such and that the said Democratic officers of said election were guilty of conspiracy, fraud and intimidation at said precinct, by reason of which the voters in said precinct were not permitted to express their choice of candidates freely and fairly, nor were they allowed to have their said expression fairly counted, and that by reason of the said irregularities, intimidation, and fraud, the said relators received only five votes at said precinct and their respective opponents received one hundred ninety-five votes each, at said precinct, and they pray that said Board of Canvassers be commanded to exclude the entire vote at this precinct in ascertaining and certifying the general result of said election, in so far as it affects the relators.
The alternative writ further alleges that in precinct number 12, in Triadelphia District, known as Landville, the said Board of Canvassers refused to count the said votes cast at said precinct from the face of the returns thereof as demanded by the relators; that at said precinct, upon the face of the returns, the said Hatfield was shown to have received 185 votes for Sheriff, that said Hunter was shown to have received 159 votes for Assessor, and that said Cook was shown to have received 159 votes for Commissioner of the County Court; and that said Skaggs received 60 votes for Sheriff, that said Gore received 71 votes for Assessor and that said Schweitzer received 70 votes for Commissioner of the County Court; that at said voting precinct the poll clerks had improperly signed the ballots voted at said precinct in this: that they had not each signed each of said ballots in their own handwriting, but that approximately on one-half of said ballots, the names of both poll clerks were signed by one of them, and that on the residue, both names were signed by the other poll clerk.
The writ also alleges that this condition was brought about by the design and trickery of the Democratic poll clerks whereby the Republican poll clerks were inveigled into signing the same as before set forth, at said precinct, and the writ further alleges that the said ballots had the appearances of having been *Page 698 
tampered with; that the ballots were contained in four packages, each of which packages were placed in the ballot box, and that when they were taken from the ballot box, it appeared that the seal on one of said packages had been broken; and it further alleges that one of the packages was signed on the back thereof by D. W. Morgan, whereas the record fails to disclose the name of such person as acting as an officer of said election.
And the relators pray that the vote cast in said precinct number 3, known as Striker precinct in Chapmanville district, be excluded from the general result of said election, and that the same be not counted as against them and each of them. And they further pray that the said Canvassing board be commanded to ascertain and certify the result in precinct number 12 in Triadelphia District, known as Landville, as shown by the face of the returns of the election in said precinct.
Referring to the first assignment in said writ which charges irregularities in the manner in which the election officers were appointed, fraud and intimidation, in precinct number 3 in Chapmanville District, we are of opinion that the matters set up therein are such as could not, under the law, be passed upon or inquired into by the Board of Canvassers. The duty of the Board of Canvassers is to canvass the returns of the election and accurately ascertain the result thereof from said returns, and in doing so, the Board is required first to ascertain whether or not the returns placed before them are, in fact, the returns of the said election, and that they are in proper form, and if not in proper form, to have them corrected so as to conform to the requirements of the law. They have the right to have the officers of the election and others summoned before them for these purposes and these purposes alone.
The Board of Canvassers has no authority to go beyond the returns to examine into irregularities, fraud, and illegal acts charged to have been done at the voting place on the election day. These matters are properly cognizable in a court of law, in election contest proceedings under Chapter 6 of the Code.Brazie v. Fayette County Commissioners, 25 W. Va. 213; State exrel Sizemore v. Hunter, 86 W. Va. 544; State v. Robinson,88 W. Va. 708.
And as to the second assignment in said writ, referring to the action of the Board of Canvassers in refusing to ascertain the result of said election held at Precinct No. 3 in Chapmanville District from the face of the returns, it appears that after the polls were closed at said precinct on the election day, that the ballots at said precinct were unstrung and placed in four separate packages and sealed and upon the seals the Commissioners of the election signed their names across the same, except in one instance in which W. D. Morgan requested one of the other Commissioners to sign his name across the seal, and in so signing his name across the same, the person who wrote the name reversed the initials of said Morgan, and signed the name D. W. Morgan, instead of W. D. Morgan.
It appears from the record that after the envelopes containing the ballots had been so signed by the Commissioners, that they were packed closely within the ballot box, and that the reason for so separating the said ballots was on account of the number of the same, and it being impractical to place all the ballots in one package, and to insert the same in the ballot box, the opening being too small in the ballot box to insert all the ballots in one package; that when these four packages of ballots were taken from the ballot box, that upon one of said packages the seal appeared to have been broken. It also appeared from said ballots that each and every one of the ballots voted at said precinct was improperly signed by the clerks as hereinabove set forth. It does not clearly appear from the record whether the seal on the package was broken by taking the package of ballots from the ballot box at the time that they were opened by the Board of Canvassers, or in some other way, but whether the ballots had actually been tampered with or showed evidence of having been tampered with, makes no difference in this particular case, for the reason that all of the ballots at said precinct were, under the law, void. It would not make any difference whether the ballots had been tampered with and the face of the ballots changed, as these illegal acts could not make these void ballots valid. The Statute requires that the poll clerks shall personally sign their names on the backs of the ballots and it also provides that ballots not so signed shall not be counted. The rule that where ballots are not preserved as required by law, that they must be disregarded as primary evidence and the returns of the election officers treated as the best evidence of the results of the election held, as decided in State v. Robinson, 88 W. Va. 708; 107 S.E. 763, does not apply in this case, for the reason that any alteration of the face of the ballots could not have any effect upon these void ballots, and the Statute having expressly declared that ballots signed in the manner herein referred to, shall not be counted; and this Court having held in Kirkpatrick v. Deegans,53 W. Va. 275, that
 "The clause requiring each poll clerk to write his name on the back of each ballot before it is delivered to the voter is constitutional, valid, and mandatory, and ballots not so endorsed must be rejected in ascertaining the result."
And likewise in Stafford v. Sheppard, 57 W. Va. 84, the Court held:
 "If the ballots have the appearance of having been tampered with, the evidence of poll clerks and commissioners may be used before a canvassing board upon a recount to show that the ballots are all void because of the want of signatures of both poll clerks, each in his own handwriting, upon all the ballots at such precinct, but not to show that the ballots have not been altered, or to show the contents of the ballots; nor can that or other evidence be used otherwise to repel the prima facie case of tampering arising from such appearance of the ballots. If it appear from such evidence that all ballots are void for such defect, then the ballots of the precinct cannot be recounted, nor can the result be declared from the certificates made by the officers conducting the election. In such case the election at that precinct is void."
All the ballots in this precinct having been found to be improperly signed, the Board of Canvassers acted legally in rejecting the vote in said precinct and in refusing to count the same, either upon a recount of the ballots, or from the certificates made by the officers conducting the election. The writ is denied.
Writ denied.
 *Page 1