Mose Parsley *v.* County Court of Raleigh County, *et al.*

(No. 7542)

Submitted January 25, 1933. Decided February 7, 1933.

*McGinnis, Ashworth & Mann,* for relator.
*George W. Williams,* for respondents.

LITZ, JUDGE:

This is a proceeding in mandamus to compel respondents, J. C. Hobson, John F. Bolen and J. R. Smith, as members of the board of canvassers of Raleigh county, to issue to relator, Mose Parsley, a certificate of election as a candidate for justice of the peace in Trap Hill District of said county in accordance with a recount of the ballots cast for himself and respondent, H. N. Allen, as candidates for said office at the last general election.

Candidates for the two positions of justice of peace in said district, received, according to a canvass of the returns, the following vote: H. P. Stone 1171; H. N. Allen 919; Mose Parsley 917; and Emmett A. Gray 742. Gray accepted the canvass, and all parties interested conceded the election of Stone. Parsley demanded a recount of the ballots cast for Allen and himself. The recount of the four precincts in the district resulted as follows:

| | | | | | | |
|---|---|---|---|---|---|---|
| No. 1 | Glen Daniel, | Parsley | 223, | Allen | 244 |
| No. 2 | Lester, | " | 284, | " | 308 |
| No. 3 | Eccles, | " | 322, | " | 311 |
| No. 4 | Metalton, | " | 82, | " | 45 |
| | Total | " | 911, | " | 898. |

The board of canvassers accepted the recount in precincts No. 1 Glen Daniel and No. 4 Metalton, but rejected the recount in

precincts No. 3 Eccles and No. 2 Lester, on the ground that the ballots therein had not been preserved as required by law, and issued a certificate of election to Allen on the basis of the recount of No. 1 Glen Daniel and No. 4 Metalton precincts and the canvass of returns from No. 3 Eccles and No. 2 Lester. The board also found that many of the ballots from No. 3 Eccles precinct were peculiarly marked in that each of such ballots bore evidence of the use of different pencils by different hands.

When the ballot boxes were inspected for the recount, the envelope containing the ballots from No. 3 Eccles precinct was open (the seals being broken) and the ballots from No.2 Lester precinct were in loose bundles without an envelope. The explanation of these apparent irregularities, contained in ex parte affidavits filed on behalf of relator, is, in one case, that the envelope probably had been forced open by the unusual bulk and weight of the ballots, and, in the other, that the election officials had not been furnished with an envelope in which to seal the ballots. These affidavits are also to the effect that the ballots were not tampered with after being counted at the polls, and that the ballots from No. 3 Eccles precinct bore no evidence of tampering; but it is not claimed that the ballots were guarded in the county court clerk's office after working hours and none of them are presented to this Court for inspection. We must, therefore, accept the finding of the board that the ballots from No. 3 Eccles precinct bore evidence of tampering. "Any presumption that may arise from evidence of care, or from lack of evidence of opportunity to tamper, must of course give way to the actual fact when established, that the ballots on their faces show that they have been changed." *Mullins* v. *Board of Canvassers,* 102 W. Va. 267, 271, 134 S. E. 597, 599.

Did the board improperly reject the recount of No. 2 Lester where Parsley gained seventeen votes? There is no pretense of compliance with Chapter 3, Article 5, section 32, Code 1931 (requiring the ballots to be sealed in an envelope) in this precinct.

"If there is evidence tending to show that the ballots are not sealed up after being counted by the precinct election officers, the ballots, on recount, are not the best evidence, but the

result will be governed by the precinct certificates, where the certificates and the recount differ in result." *Dent* v. *Board of Canvassers,* 45 W. Va. 750, 32 S. E. 250. "The question for consideration of the board of canvassers is not whether the ballots have been in fact tampered with, but whether there has been an opportunity to destroy their integrity, and if the same have been left in the custody of anyone without being sealed in the manner required by law, this fact of itself, under our decisions, destroys their value as primary evidence before the board of canvassers. * * * Nor do we think it is competent for the board of canvassers to enter upon an inquiry as to whether or not the ballots were actually tampered with by the party in whose custody they were, or by anyone else, during the time they were unsealed. Under the law, they are primary evidence of the result of the election only when they have been preserved in the manner prescribed by law, and when it appears that they have not been so preserved, they lose their character as such evidence before the board of canvassers. *State ex rel. Gabbert* v. *Robinson,* 88 W. Va. 708, 711, 107 S. E. 763, 764. "Certificates made by the commissioners at the precincts are prima facie evidence of the result of an election, the ballots, if identified as the same cast at the election precincts, are primary and higher evidence; but to continue the ballots as controlling evidence, it must appear that they have been preserved in the manner and by the officers prescribed by the statute, and that while in such custody they have not been changed or tampered with." *Jarrett* v. *Board of Canvassers,* 98 W. Va. 326, 128 S. E. 821. The same rule is stated in *Stafford* v. *Sheppard,* 57 W. Va. 84, 50 S. E. 1016; *Mullins* v. *Board of Canvassers, supra;* and *Johnson* v. *Board of Canvassers,* 102 W. Va. 703, 710, 136 S. E. 722.

We are, therefore, of opinion that the recount in No. 3 Eccles and No. 2 Lester precincts was properly rejected, and that the peremptory writ should be refused.

*Writ denied.*